**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ISRAEL PADRON, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOLDEN STATE PHONE & WIRELESS, a California Corporation; and Does 2 through 10,<br><br>Defendant. | Case No. 16-cv-04076-BLF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD**<br><br>[Re: ECF 36, 40] |

On April 19, 2018, the Court heard Plaintiff's Motion for Final Approval of Class Action Settlement (ECF 40) and Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award (ECF 36). The motions are GRANTED for the reasons discussed below.

**I.   BACKGROUND**

Plaintiff Israel Padron filed this action against Defendant Golden State Phone & Wireless ("GSP") on July 20, 2016, asserting violations of the California Labor Code, California Business and Professions Code, and Fair Labor Standards Act. Compl., ECF 1. Plaintiff subsequently filed the operative first amended complaint ("FAC"), adding a claim under the California Private Attorneys General Act. FAC, ECF 15. According to the FAC, Defendant is a business that offers cellular service, retail sales, and business phone systems. *Id.* ¶ 6. Plaintiff alleges that he worked as an hourly non-exempt employee of Defendant's store in San Luis Obispo, California. *Id.* ¶¶ 4, 6. In addition to the hourly base rate, Plaintiff and other similarly situated employees received sales commissions and other discretionary incentive pay. *Id.* ¶ 12. Plaintiff further alleges that Defendant failed to include all commissions when calculating its employees' regular rate of pay,

thereby underpaying the required overtime wages. *Id.* ¶ 13. In addition, as a result of this underpayment, Defendant allegedly (1) failed to timely pay all final wages due at the time of employment termination, (2) maintained inaccurate payroll records, and (3) issued inaccurate wage statements. *Id.* ¶ 14.

On this basis, the FAC asserts claims for: (1) failure to pay overtime wages, Cal. Lab. Code §§ 204, 510, 558, 1194, 1198; (2) violation of Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, et seq.; (3) wage statement penalties, Cal. Lab. Code § 226, et seq.; (4) waiting time penalties, Cal. Lab. Code. §§ 201–203; (5) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq.; and (6) violation of the Private Attorneys General Act, Cal. Lab. Code §§ 2698, et seq. FAC ¶¶ 23–55.

Prior to the Case Management Conference, the parties notified the Court that they had reached a class-wide settlement. ECF 26-1. Thereafter, based on the parties' settlement, Plaintiff moved for a preliminary approval of class action settlement. Mot. for Prelim. Approval, ECF 30. The settlement defines two classes:

> **California Commission Overtime Subclass**
> All hourly, non-exempt employees who worked at any of GSP's locations in California between July 20, 2012 and October 20, 2016, and who both worked overtime and earned a nondiscretionary commission in the same pay period at least once between July 20, 2012 and October 20, 2016.
>
> **FLSA Commission Overtime Subclass**
> All hourly, non-exempt employees who worked at any of GSP's locations throughout the United States between July 20, 2013 and October 20, 2016, and who both worked overtime and earned a nondiscretionary commission in the same pay period at least once between July 20, 2013 and October 20, 2016.

Mot. for Prelim. Approval 1–2; Ex. 1 to Baltodano Decl. in Supp. of Mot. for Prelim. Approval ("Settlement Agreement"), ECF 30-1. The Settlement Agreement provides that Defendant will pay a non-reversionary Gross Settlement Amount ("GSA") of $150,000. Mot. for Prelim. Approval 2. The Settlement Agreement further sets forth the following deductions from the GSA: Court-approved attorneys' fees of $37,500 (25% of the GSA); verified costs of up to $10,000; Court-approved incentive award of $5,000; PAGA award allocation to the California Labor and

1  Workforce Development Agency ("LWDA") of $1,875; and settlement administration costs of
2  $9,500. *Id.* at 14; Settlement Agreement 3.A. After deductions of the proposed Court-approved
3  Plaintiff's incentive payment, Court-approved settlement administration costs, Court-approved
4  attorneys' fees and verified costs, and PAGA payment to LWDA, class members would receive
5  their settlement shares from a Net Settlement Fund of approximately $86,125. *Id.*

6  On September 28, 2017, the Court issued an order which: granted preliminary approval of
7  the class action settlement; preliminarily certified the California Commission Overtime Subclass
8  and the FLSA Commission Overtime Subclass; appointed Plaintiff Padron as the Class
9  Representative; appointed Hernaldo J. Baltodano, Erica Flores Baltodano, and Matthew K. Moen
10 of Baltodano & Baltodano LLP as Class Counsel; appointed CPT Group, Inc. as the third-party
11 Claims Administrator; approved forms and content of the Class Notice, Exclusion Form, FLSA
12 Consent Form, and Individual Form (collectively, "Notice Packet"); set a sixty (60) days deadline
13 from the mailing date of the Notice Packet for objections; and set a hearing date of April 19, 2018
14 for Plaintiff's motion for final approval of the class action settlement and for Plaintiff's motion for
15 attorneys' fees, costs, and incentive award. *See* Order Granting Prelim. Approval of Class Action
16 Settlement ("Preliminary Approval Order"), ECF 35. No objections were filed. On April 19,
17 2018, the Court heard Plaintiff's motion for final approval of class action settlement and motion
18 for attorneys' fees, costs, and incentive award.

**II. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

In order to grant final approval of the class action settlement, the Court must determine that (a) the class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (b) the settlement reached on behalf of the class is fair, reasonable, and adequate. *See In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679, 690 (9th Cir. 2018) (discussing requirements for class certification in settlement context); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026-27 (9th Cir. 1998) (discussing requirements for fairness finding). The two determinations are separate: "A court may not justify its decision to certify a settlement class on the ground that the proposed settlement is fair to all putative class members." *Hyundai*, 881 F.3d at 694.

### A. The Class Meets the Requirements for Certification under Rule 23

A district court which certifies a class for settlement purposes "must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of Rule 23." *Hyundai*¸ 881 F.3d at 690 (internal quotation marks and citation omitted). "A district court's certification must be supported by sufficient findings to be afforded the traditional deference given to such a determination." *Id.* (internal quotation marks and citation omitted).

Plaintiff addressed the Rule 23 requirements in the motion for preliminary approval of the class settlement, showing that certification is appropriate under Rule 23. *See* Mot. for Prelim. Approval 6–19. Based on that showing, the Court conditionally certified the class and granted preliminary approval of the class settlement. *See* Preliminary Approval Order. However, the Court's preliminary approval order did not recite the Court's findings with respect to Rule 23 in any detail. *See id.* Accordingly, the Court articulates those findings here.

A class action is maintainable only if it meets the four requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In a settlement-only certification context, the "specifications of the Rule – those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchen*, 521 U.S. at 614. Plaintiff seeks certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently

4

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Turning first to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that because there are 182 California Commission Overtime Subclass Members and 30 FLSA Commission Overtime Subclass Members who submitted consent forms, individual joinder of all class members would be impracticable. *See* Yang Decl. ¶ 4, ECF 36-5; Suppl. Yang Decl. ¶¶ 6, 8 ECF 40-1. The commonality requirement is met because the key issues in the case are the same for all class members. For example, Plaintiff asserts that Defendant had uniformly failed to calculate its employees' commissions in determining the regular rate of pay. FAC ¶ 12. As a result, Defendant allegedly failed to pay overtime wages, timely pay final wages, maintain accurate wage statements, and issue accurate wage statements to its non-exempt employees. *Id.* ¶¶ 13–14. Plaintiff's claims are typical of those of the class, as Plaintiff Padron asserts that he worked as an hourly non-exempt employee and received sales commissions from Defendant. Padron Decl. ¶ 2, ECF 36-4; *see also Hanlon*, 150 F.3d at 1020 (typicality requires only that the claims of the class representatives are "reasonably co-extensive with those of absent class members"). Finally, to determine Plaintiff's adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted). The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no conflict of interest which would preclude Padron from acting as a class representative. Accordingly, the Rule 23(a) requirements are satisfied on this record.

With respect to Rule 23(b), the predominance inquiry "simply tests whether questions common to the class are more prevalent or important than individual ones, a standard which is readily met in consumer class actions." *Hyundai*, 881 F.3d at 708 (internal quotation marks and citations omitted). Common issues "which turn on a common course of conduct by the defendant, establish predominance in nationwide class actions." *Id.* at 708–09. The present action turns on Defendant's common course of conduct with respect to its hourly non-exempt employees, for

example, whether Defendant uniformly failed to provide overtime wages based on a miscalculated regular rate of pay. All claims are brought on behalf of the class members are based on Defendant's uniform conduct. Given these commonalities, and the number of class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue. Accordingly, the Court concludes that the requirements of Rule 23(b)(3) are met and thus that certification of the class for settlement purposes is appropriate.

### B. The Settlement is Fair, Reasonable, and Adequate

Having determined that class certification is appropriate, the Court must evaluate the substance of the class action settlement. Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. Moreover, "[a] district court's approval of a class-action settlement must be accompanied by a finding that the settlement is 'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)). "[A] district court's only role in reviewing the substance of that settlement is to ensure that it is fair, adequate, and free from collusion." *Id.* (internal quotation marks and citation omitted). In making that determination, the district court is guided by the "*Hanlon* factors" articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp. Id.* Those factors include:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026-27; *see also Lane*, 696 F.3d at 819 (discussing *Hanlon* factors). "Additionally, when (as here) the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness.'" *Lane*, 696 F.3d at 819 (quoting *Hanlon*, 150 F.3d at 1026).

As a preliminary issue, the Court is satisfied that the class members were provided with adequate notice. Prior to the preliminary approval hearing, the Court carefully examined the

Notice Packet including the proposed Class Notice, Exclusion Form, FLSA Consent Form, and Individual Form. The Notice Packet contained key information regarding the terms of the settlement as well as the rights and releases of claims under the settlement. *See* Exs. A–D to Settlement Agreement, ECF 30-1. The Notice Packet further informed the Class Members about the deadline to opt-out, opt-in under the FLSA, or file an objection to the settlement. *Id.* As such, the Court was satisfied with the Notice Packet. The Notice Packet was mailed by the claims administrator on October 16, 2017 to all class members. Yang Decl. ¶ 6.

In addition, the Court notes that there is no indication of collusion on reaching the settlement. The parties participated in arms-length negotiations with the aid of a respected mediator with experience in wage and hour class actions. *See* Baltodano Decl. in Supp. of Motion for Prelim. Approval ¶ 12. While the parties were unable to reach a resolution during the mediation, they were able to agree on two settlement proposals and continued negotiations with the help of the mediator. *Id.* As a result, the parties were able to eventually agree on the Settlement Agreement. *Id.* "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *13 (N.D. Cal. Apr. 22, 2010) (citing 4 Newberg § 11.41). The Court next turns to the *Hanon* factors.

### i. Strength of Plaintiff's Case and Risk of Continuing Litigation

Approval of a class settlement is appropriate when "there are significant barriers plaintiffs must overcome in making their case." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Similarly, difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).

Here, Plaintiff acknowledges that despite the strength of his case, there are risks on obtaining class certification and succeeding on the merits. Mot. for Final Approval 7, ECF 40; Baltodano Decl. in Supp. of Mot. for Prelim. Approval ¶ 14. Specifically, Plaintiff recognizes that Defendant would strongly argue against class certification in the absence of a settlement. Mot. for Final Approval 7. Plaintiff also considers the possibility that the Court "would likely exercise its

1  discretion to reduce . . . penalties" even if certification was granted. *Id.* As such, the Court finds that this factor weighs in favor of settlement.

### ii. Settlement Amount

"In assessing the consideration obtained by the class members in a class action settlement, 'it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) (quoting *Officers for Justice,* 688 F.2d at 628). "In this regard, it is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

The Settlement Agreement represents a substantial benefit that compensates all Class Members for their unpaid overtime wages owed, plus interest. Baltodano Decl. in Supp. of Mot. for Prelim. Approval ¶ 17. Class Members will recover $150,000 which represents about 47% of Plaintiff's reasonably forecasted recovery for the class. *Id.* ¶ 28. This recovery still ensures 100% recovery of all actual overtime wages owed. *Id.* After deducting the proposed Court-approved Plaintiff's incentive payment, Court-approved settlement administration costs, Court-approved attorneys' fees and verified costs, and PAGA payment to the LWDA, Class Members would receive their settlement shares from a Net Settlement Fund of approximately $82,003.06.[1] Mot. for Final Approval 10. As a result, the average settlement payment per Class Member is about $450.57. Suppl. Yang Decl. ¶ 11. This settlement amount is substantial because it fully compensates all Class Members for their unpaid overtime wages owed, plus interest. Baltodano Decl. in Supp. of Mot. for Prelim. Approval ¶ 17. Moreover, the top 25% of Class Members will receive average payments of $1,501.29, with the highest payment valued at $10,162.88. Suppl. Yang Decl., ¶ 11. In addition, there have been no objections to the settlement amount. Under these circumstances, the Court finds that this factor weighs in favor of approval.

### iii. Extent of Discovery

---

[1] This value is about $5,000 less than presented in Plaintiff's motion for preliminary approval due to increased settlement administration costs.

8

"In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d at 459 (citation omitted).

Here, Plaintiff has engaged in extensive informal discovery, research, and analysis of class-wide payroll and timekeeping data prior to reaching the settlement. Baltodano Decl. in Supp. of Mot. for Prelim. Approval ¶ 11. Plaintiff also obtained certain financial documents from Defendant which facilitated the parties' negotiations. *Id.* ¶ 12. These actions put Plaintiff in a strong position to evaluate the case and conclude that settlement was the best way forward. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (class counsel's significant investigation and discovery and research supported that the plaintiffs had sufficient information to make an informed decision about the settlement). This factor therefore weighs in favor of approval.

### iv. Counsel's Experience

Plaintiff's counsel have recommended approval of the settlement. Mot. for Final Approval 6. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (citation omitted); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each parties' expected outcome in litigation."). Here, Plaintiff is represented by competent and experienced wage and hour class action counsel who have been appointed as counsel in numerous cases alleging similar claims. *See* Hernaldo J. Baltodano Decl. in Supp. of Mot. for Attorneys' Fees ¶¶ 1–10, ECF 36-1; Matthew K. Moen Decl. in Supp. of Mot. for Attorneys' Fees ¶¶ 2–8, ECF 36-2; Erica F. Baltodano Decl. in Supp. of Mot. for Attorneys' Fees ¶¶ 1–3, ECF 36-3. In light of Class Counsel's considerable experience and their belief that the settlement provides more than adequate benefits to Class Members, the Court finds that this factor weighs in favor of approval.

### v. Presence of a Governmental Participant

Because there is no governmental entity involved in this litigation, this factor is

inapplicable.

### vi. Reaction of the Class

No Class Member has filed an objection to the settlement or requested exclusion from the Settlement Class. Yang Decl. ¶¶ 8–9. Accordingly, this factor strongly favors final approval. *Cf. Cruz v. Sky Chefs, Inc.*, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."); *Chun-Hoon*, 716 F. Supp. 2d at 852 (granting final approval of settlement where 16 out of 329 class members (4.86%) requested exclusion). Moreover, 30 of the 155 FLSA Commission Overtime Subclass members submitted FLSA Consent Forms to recover additional monies, resulting in a 19.35% participation rate. Suppl. Yang Decl. ¶ 6. This participation rate exceeds other federally approved FLSA settlements. *See, e.g.*, *Scott v. Aetna Servs., Inc.*, 210 F.R.D. 261, 266 (D. Conn. 2002) (7.8% opt-in rate for FLSA class). These considerations show that the settlement is beneficial to Class Members. Therefore, this factor weighs in favor of final approval.

### C. Conclusion

Based on the foregoing reasons, and after considering the record as a whole as guided by the *Hanlon* factors, the Court finds that notice of the proposed settlement was adequate, and the settlement is fair, adequate and reasonable. Accordingly, Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

### A. Attorneys' Fees and Costs

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *Id.* at 942. An attorney also

is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).

Plaintiff seeks an award of attorneys' fees totaling $37,500, which represents 25% of the "Gross Settlement Amount" of $150,000, as well as $8,621.94 in verified costs incurred in prosecuting the litigation. Mot. for Attorneys' Fees 1. The Court has no hesitation in approving an award of costs in the requested amount of $8,621.94. Class Counsel has submitted a declaration stating that counsel incurred $8621.94 in actual expenses, and that all of those expenses reasonably were incurred in prosecution of this litigation. *See* Baltodano Decl. in Supp. of Mot. for Attorneys' Fees ¶ 17. The itemized list of expenses provided by counsel supports a conclusion that the expenses were reasonably necessary. *See* Ex. 2 to Baltodano Decl. in Supp. of Mot. for Attorneys' Fees, ECF 36-1. The requested amount of $8621.94 is consistent with the Settlement Agreement, which stated that Class Counsel may be reimbursed up to $10,000 for verified costs and expenses related to the lawsuit. Settlement Agreement 3.A.(6).

The Court likewise concludes that an award of attorneys' fees in the requested amount of $37,500 is quite reasonable. Using the percentage-of-recovery method, the amount requested represents 25% of the Gross Settlement Amount, which in this circuit is "the benchmark for a reasonable fee award." *Bluetooth*, 654 at 942. An award of this amount is supported by a lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (lodestar calculation may provide a cross-check on the reasonableness of a percentage award in common fund case). Class Counsel incurred at least 261.6 hours of attorney and paralegal time on this case through final approval, reflecting a lodestar of $100,720. Baltodano Decl. in Supp. of Mot. for Attorneys' Fees ¶ 15; Ex 1 to Baltodano Decl. in Supp. of Mot. for Attorneys' Fees, ECF 36-1. $100,720 is calculated by the total sum of (1) $675 multiplied by 64.4 hours (partner Hernaldo Baltodano' time), (2) $325 multiplied by 151.6 hours (associate attorney, Matthew Moen's time), and (3) $175 multiplied by 45.6 hours (paralegal, Eric Wooten's time). Baltodano Decl. in Supp. of Mot. for Attorneys' Fees ¶¶ 12–15. Here, Class Counsel's lodestar of $100,720 *exceeds* the requested attorneys' fees of $37,500. As such, the Court finds that the requested award of $37,500

is reasonable. *See Goldkorn v. County of San Bernardino*, Case No. EDCV 06-707, 2012 WL 476279 at *10 (C.D. Cal. Feb. 13, 2012) ("Class counsel assert that the lodestar for their fees and costs amounts to $826,117.20 . . . [T]he amount of $690,000.00 in attorneys' fees and costs . . . appears reasonable in comparison.").

### B. Incentive Award

Incentive awards, also referred to as service or enhancement awards, "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (internal citation omitted).

In evaluating a request for a service award, the district court should consider "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks and citation omitted) (alterations in original). The district court also must "consider the proportionality between the incentive payment and the range of class members' settlement awards." *Willner v. Manpower Inc.*, No. 11-CV-02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015). Where there is a "very large differential in the amount of damage awards between the named and unnamed class members," such differential must be supported by the record. *Staton v. Boeing Co.*, 327 F.3d 938, 978 (9th Cir. 2003).

Class Counsel, on behalf of Plaintiff Padron, requests an incentive award of $5,000. Mot. for Attorneys' Fees 22. Plaintiff actively assisted Class Counsel in advancing this case by gathering and reviewing documents for use in this lawsuit. Padron Decl. ¶ 3. For example, Padron spent efforts to review his wage statements and employee file; review Defendant's wage and hour policies, employee handbook, and Staff Compensation Plan; and meet with Class Counsel on multiple occasions to discuss Defendant's policies and wage and hour practices. *Id.* ¶ 4. Padron also spent time reviewing pleadings filed in this lawsuit. *Id.* Overall, Padron spent

about 20 hours to advance this case. *Id.* As such, Padron has expended considerable efforts to litigate this action. No one has objected to the proposed incentive award.

To determine the reasonableness of an incentive award, courts consider the proportionality between the incentive award and the range of class members' settlement awards. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014). In this Circuit, an award of $5,000 is presumptively reasonable. *See Harris v. Vector Marketing Corp.*, No. C-08-5198, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting cases). Thus, in light of Plaintiff Padron's efforts and service to the class, the Court finds that an incentive award of $5,000 is reasonable and will grant the request for the incentive award.

**C. Conclusion**

For the foregoing reasons, Plaintiff's motion for attorneys' fees, costs, and incentive award is GRANTED.

**IV. ORDER**

For the foregoing reasons,

(1) Plaintiff's Motion for Final Approval of Class Action Settlement is GRANTED.

(2) Plaintiff's Motion for Attorneys' Fees, Costs, and Incentive Award is GRANTED.

(3) The Clerk shall close the file pursuant to this order and the Final Judgment issued simultaneously.

**IT IS SO ORDERED.**

Dated: May 16, 2018

_____
BETH LABSON FREEMAN
United States District Judge

13